UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:18-CR-7 JD |
| EDUARDO LUCIANO | |

**OPINION AND ORDER**

The Government has submitted a *Santiago* proffer in which it seeks preliminary admission of statements against Defendant Eduardo Luciano. (DE 274.) Mr. Luciano responded to the Government's proffer by indicating that he had no objection to it. (DE 277.) The proffer describes the evidence that the Government will present at trial to prove: that a conspiracy to conduct and participate in the affairs of the Latin Counts gang existed; that Mr. Luciano, cooperating co-defendants Ivan Reyes, Robert Jose Loya, and Jeron Anthony Williams were each members of the conspiracy; and that individuals involved in the conspiracy made various statements in furtherance of the conspiracy. After considering the Government's submission, the Court conditionally finds that, if the Government produces the proffered evidence at trial, it will have satisfied the requirements under Federal Rule of Evidence 801(d)(2)(E) to admit such statements as non-hearsay evidence.

An out of court statement offered for the truth of the matter asserted is generally inadmissible hearsay. Fed. R. Evid. 801(c); 802. But under Rule 801(d)(2)(E), a statement that would otherwise be hearsay is not considered hearsay where "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." To admit statements against a defendant under this rule, the government must demonstrate by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant

and declarant were both members of the conspiracy; and (3) the statements to be admitted were made in the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010). The Seventh Circuit has endorsed a process for admitting statements under this rule by which a district court may conditionally admit the statements based on a pretrial proffer by the Government, subject to reevaluation at trial based on the evidence actually presented. *United States v. McClellan*, 165 F.3d 535, 553–54 (7th Cir. 1999); *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir. 1978). In making its determination, the Court must decide "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *Santiago*, 582 F.2d at 1143. The Court may consider the proffered statements themselves as evidence of both the existence of a conspiracy and the defendant's participation in the conspiracy, but the contents of the statements must also be corroborated by at least some supporting evidence. *United States v. Harris*, 585 F.3d 394, 398–99 (7th Cir. 2009). Such evidence may be either direct or circumstantial. *See United States v. Johnson*, 592 F.3d 749, 754–55 (7th Cir. 2010).

      Here, the Government seeks a conditional ruling admitting statements, primarily from the cooperating defendants in this case, that will establish the information flow between coconspirators that was intended to help advance the Latin Counts' gang activities and thus the conspiracy. (DE 274 at 22–23.) The Government's proffer offered one specific example of a statement that the Government intends to introduce to establish the conspiracy's information flow but otherwise opted to provide only a more generalized list of categories and subjects of statements that the Government believes would be admissible under Rule 801(d)(2)(E). (DE 274 at 23–24.) The Court conducts its preliminary analysis of the admissibility of the statements tied

to the conspiracy in two parts. First, it considers whether the Government has presented sufficient evidence for the Court to conclude that Mr. Luciano, his cooperating co-defendants, and others expected to testify were engaged in a conspiracy. If they were, the Court then considers whether the statements the Government seeks to admit were made during and in furtherance of the conspiracy.

The Government indicated in its proffer that it intends to prove that a conspiracy existed by presenting evidence of the defendants' tattoos showing an allegiance to the Latin Counts, testimony from cooperating individuals regarding their personal knowledge of the Latin Counts operation and criminal activity, and photographs of the Latin Counts and their associates. (DE 274 at 16.) "An unlawful conspiracy exists when two or more people agree to commit an unlawful act, and the defendant 'knowingly and intentionally' joins in the agreement." *United States v. Bey*, 725 F.3d 643, 648 (7th Cir. 2013) (citing *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010)). Based on the government's proffer, the Court finds that it has met its burden to demonstrate that an agreement to pursue the alleged scheme existed between Mr. Luciano, his codefendants, and others expected to testify.

First, the Government anticipates presenting evidence showing that the Latin Counts were an enterprise. The Supreme Court has outlined the three essential features of an association-in-fact enterprise, the kind of enterprise the Government alleged in the indictment: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit the associates to pursue the enterprise's purpose. *Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1093 (N.D. Ill. 20160 (citing *Boyle v. United States*, 556 U.S. 938, 946–48 (2009)). To establish that the Latin Counts qualify as an enterprise, the Government expects to present evidence that the Latin Counts originated on the South Side of Chicago and have a

faction in Hammond that was established in roughly 2009. (DE 274 at 16.) The Government also expects to produce evidence that the Latin Counts have: a detailed organizational structure that has been reduced to writing; a set of hand signs that members use to communicate; designated symbols and colors attributed to the organization; a rival gang, namely the Latin Kings; specific rules about becoming a member; and specific rules about required conduct after becoming a member, including patrolling the gang neighborhood, following orders from ranking members, attending gang meetings, and paying dues into the gang. (*Id.* at 17–18.)

In addition to the evidence meant to establish the Latin Counts as an enterprise, the Government also expects to present evidence that specifically demonstrates that the Latin Counts were an enterprise whose purpose was to frequently engage in illegal activity. The Government plans to present evidence that the Latin Counts have a rule requiring members to shoot on sight or fight on sight any rival gang member whenever and wherever a member sees them. The Government also expects to present evidence that cooperating defendants and other coconspirators expected to testify at trial engaged in crimes including assault, battery, armed robbery, attempted murder, murder, unlawful firearms possession, narcotics distribution, and narcotics possession as part of their membership with the Latin Counts. (*Id.* at 18–19.) Specifically, the Government plans to show that virtually all Latin Counts members expected to testify "were involved in drug dealing in some way, shape, or form," including traditional drug dealing and drug-related robberies and burglaries. (*Id.* at 19.) The Government also expects that "[v]irtually every cooperating defendant will testify that he has shot at rival gang members" and that even if a cooperating defendant cannot testify to having shot at rival gang members himself, he will have been present when other Latin Counts members did shoot at rival gang members. (*Id.* at 20.)

The Government also expects to explicitly link Mr. Luciano and his codefendants to the Latin Counts enterprise and the crimes that the enterprise committed. Specially, the Government has indicated it has evidence that Latin Counts meetings were often held at Mr. Luciano's residence or his mother's residence in Hammond and that gang business, including bringing in prospective members, distributing narcotics, and keeping tabs on rival gang activity, were often topics of conversation during those meetings. (*Id.* at 18.) The Government additionally plans to present evidence that on June 29, 2015, Mr. Luciano, Mr. Reyes, Mr. Williams, and one other Latin Count planned to shoot at a group of Latin Kings who were congregated for a vigil for a deceased Latin Kings member. The evidence is expected to show that a Latin Count, acting in part at Mr. Luciano's direction, fired multiple shots into the vigil crowd and killed Lauren Calvillo and Christopher White. (*Id.* at 20.) Additionally, Mr. Reyes, Mr. Loya, Mr. Williams, and others are expected to testify that Mr. Luciano: was a member of various factions of the Latin Counts and held a leadership position in the Hammond faction; paid dues; attended meetings; patrolled neighborhoods; carried and distributed firearms; ordered that various Latin Counts members be beaten for breaking gang rules or making mistakes; and participated in various shootings directed at Latin Kings members. (*Id.* at 21–22.) The Government also plans to present Facebook photos showing Mr. Luciano in Latin Counts colors, including some photos with comments or captions indicating Mr. Luciano's loyalty to the Latin Counts. (*Id.* at 22.)

After considering all this evidence, the Court concludes that the Government has provided the Court with a sufficient basis to conclude that Mr. Luciano; his co-defendants Mr. Loya, Mr. Reyes, and Mr. Williams; as well as other coconspirators were each more likely than not working together with the joint purpose of perpetuating the various illegal activities of the Latin Counts gang, which is the essence of a conspiracy. *See United States v. Speed*, 656 F.3d

714, 717 (7th Cir. 2011) (explaining that to establish a conspiracy, the Government must demonstrate an understanding, either explicit or implicit, among co-conspirators to work together to achieve an illegal goal). Accordingly, the Court finds preliminarily that the proffered evidence will be sufficient to permit a finding by a preponderance of the evidence that a conspiracy existed between Mr. Luciano, Mr. Reyes, Mr. Loya, Mr. Williams, and their fellow coconspirators.

Having ascertained the existence of a conspiracy between Mr. Luciano and the other individuals, the Court now moves to consider whether the statements the Government intends to introduce through Rule 801(d)(2)(E) were made during and in furtherance of the conspiracy. The standard to be applied "is whether some reasonable basis exists for concluding that the statement furthered the conspiracy." *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987). A statement is "in furtherance of" a conspiracy when it promotes the conspiracy's objectives. *United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002). Under this standard, a statement is admissible as in furtherance of the conspiracy even if it is susceptible to alternative interpretations, and "need not have been exclusively, or even primarily, made to further the conspiracy." *Shoffner*, 826 F.2d at 628.

Instead of specifically listing all of the statements the Government intends to admit under Rule 801(d)(2)(E), the Government's proffer only lists one statement from an unnamed cooperating defendant and then lists more general categories and subjects that the others anticipated statements may cover. (DE 274 at 23–24); *see United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009) (explaining that a proffer need not specifically detail every statement expected to be presented and can instead summarize to some degree). The list of categories and subjects the Government provided were:

    1.    Statements regarding other members of the conspiracy, including the following:
    a.    Identifying other members of the conspiracy and their roles;
    b.    Identifying the structure and origin of the conspiracy;
    c.    Reviewing a coconspirator's exploits;
    d.    Recruiting potential coconspirators;
    e.    The roles of participants in the conspiracy's illegal activities;
    f.    Assurances that a coconspirator can be trusted to perform his role; and
    g.    To report coconspirators' status and in turn receive assurances of assistance from coconspirators;
    2.    Statements to conduct or help conduct the conspiracy's activities, including the following:
    a.    The purpose behind the criminal acts carried out by the conspiracy;
    b.    To plan criminal acts by the conspiracy;
    c.    To instill and maintain the trust and cohesiveness of the conspiracy;
    d.    To advise of the progress and accomplishments of the conspiracy;
    e.    To inform or reassure the listener regarding the conspiracy's activities;
    f.    To control damage to an ongoing conspiracy; and
    g.    To inform and update others about the current status of the conspiracy or a conspiracy's progress (including failures), and to reassure or calm the listener regarding the progress or stability of the conspiracy;
    3.    Statements concerning the means used to conceal the conspiracy's illegal activities; and
    4.    Statements to others outside the conspiracy to reassure those individuals, to seek their cooperation, and to encourage them to not reveal incriminating information.

(DE 274 at 23–24.)

The specific anticipated statement the Government highlighted referenced the alleged double homicide related to the Latin Kings vigil on June 29, 2015. The Government explained that a cooperating defendant Latin Count is expected to testify that he spoke to his brother, a now-deceased Latin Count, on the day of the double homicide. The cooperating defendant's brother allegedly told the cooperating defendant that he was with Mr. Luciano, Mr. Reyes, and Mr. Williams, that they had seen a large number of Latin Kings, and that he was going to "light it up," or shoot at the Latin Kings multiple times. (*Id.* at 24.) The statement as presented was clearly made by a member of the Latin Counts conspiracy to which Mr. Luciano has been conditionally tied for purposes of this order, and it additionally appears to have been made in

furtherance of the conspiracy as the Court finds the statement by one member of the Latin Counts to his brother, another member of the Latin Counts, could be classified as "generally part of the ordinary information flow by and among conspirators" or as serving "to inform [a member] about the current status of a conspiracy." *United States v. Rea*, 621 F.3d 595, 605 (7th Cir. 2010). The Court thus conditionally admits this statement pursuant to Rule 801(d)(2)(E). *See Cruz-Rea*, 626 F.3d at 937; *see also United States v. Jenkins*, 419 F.3d 614, 618 (7th Cir. 2005) (holding co-conspirator statements "by definition, are not hearsay" and that "*Crawford* did not change the rules as to admissibility of co-conspirator statements").

    The Court next moves on to the various categories and subjects of statements that the Government outlined in the proffer. While the Court does not have specific statements to match to each category or subject, after reviewing the descriptions of statements the Government has provided, the Court finds that the statements described, if made by an individual who was a member of the Latin Counts and during the course of the conspiracy, could be construed as furthering the underlying conspiracy to which the Government has tied Mr. Luciano. The Court acknowledges that the lack of specificity provided in the proffer as to the actual statements the Government intends to introduce inhibits its ability to opine on the admissibility of any specific statement in much detail, but the Court finds that the statements as generally described appear to be the type of statements that can properly be admitted pursuant to Rule 801(d)(2)(E). The Court makes this finding conditionally and with the understanding that any final decision on the admissibility of any particular statement being offered during trial must specifically meet the requirements laid out in *Bourjaily* and *Cruz-Rea* to be admissible under Rule 801(d)(2)(E). 483 U.S. at 175; 626 F.3d at 937. However, given the evidence the Government has presented through the proffer, the summaries of different types of statements that may be offered, and the

Defendant's lack of objection to the proffer, the Court finds it appropriate at this stage to conditionally approve such statements. *See Alviar*, 573 F.3d at 540.

Accordingly, the Court finds that the Government has shown by a preponderance of the evidence that the conspiracy described by the Government existed between Mr. Luciano, his cooperating co-defendants, and other coconspirators who were members of the Latin Counts gang. It has also shown that the conversations and statements the Court conditionally admitted above were likely made during the conspiracy and in furtherance of it. Following procedures suggested in *Santiago*, 582 F.2d 1128, the statements are conditionally admitted pursuant to Rule 801(d)(2)(E), subject to a final ruling before the close of the Government's case once the Court has seen the evidence and had the opportunity to verify that each statement the Government seeks to admit under the exception actually satisfied the elements for admission under Rule 801(d)(2)(E) or some other hearsay exception.

The Government is encouraged to lay foundation for admission of the statements, particularly the existence of a conspiracy, before seeking to admit the statements themselves against Mr. Luciano.

SO ORDERED.

ENTERED: July 5, 2022

                                                /s/ JON E. DEGUILIO
                                                Chief Judge
                                                United States District Court