UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:18-CR-7 JD |
| EDUARDO LUCIANO | |

**OPINION AND ORDER**

On July 26, 2022, after a seven-day jury trial, the jury returned a verdict of guilty on all counts against Eduardo Luciano. (DE 326.) Luciano then filed a motion for a new trial. (DE 337.) In that motion, Luciano argues that a new trial is warranted because the Court failed to remove a juror after it was revealed that the juror had previously worked for an AUSA's mother. (*Id.*) For the reasons explained below, the Court denies this motion.

A.   **Factual Background**

On January 17, 2018, a grand jury indicted Eduardo Luciano, and several of his co-conspirators, on one count of conspiracy to participate in racketeering activity. (DE 1.) The indictment alleged that Eduardo Luciano and his co-defendants were members of the Latin Count Nation ("Latin Counts"), a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, aggravated battery, aggravated assault, and narcotics distribution. (*Id.* ¶ 1.) A later superseding indictment (the "Second Superseding Indictment") then added three more counts, including one count of conspiracy to possess with intent to distribute and distribute cocaine and marijuana and two counts of murder resulting from the use and carrying of a firearm during and in relation to a crime of violence. (Second Superseding Indictment, DE 157.)

The first day of trial took place on July 18, 2022. (DE 311.) After *voir dire* was conducted and the jury selected, Juror Number 4 sent a note to the Court indicating that "she used to clean [a] house for the mother of one of the AUSAs." (DE 340 at 2:7–9.) The Court informed the Government and the Defense that it planned to bring Juror Number 4 into the courtroom, separate from the rest of the jury, so that it could ask "her [questions] about [the note to] determine if it creates any bias for her." (*Id.* at 2:11–13.) Both the Government and the Defense agreed to this approach. (*Id.* at 2:16–25.)

Juror Number 4 was then brought into the courtroom. (*Id.* at 3:1–4.) Juror Number 4 indicated that she knew the mother of one of the AUSAs, Caitlin Padula, from cleaning the mother's house. (*Id.* at 10–20.) Juror Number 4 stated that the last time she cleaned the mother's house was "[a]pproximately five-and-a-half years ago" and that she "never" saw the mother outside of the home. (*Id.* at 3:21–4:4.) The juror informed the Court that she thought she may have interacted with Ms. Padula "one time," approximately "six [or] seven years ago" when she went to clean the mother's home. (*Id.* at 3:10–17, 4:16–22.) The juror also stated that she did not believe that this relationship would impact her ability to be fair and impartial to both sides and that she had her "own mind[.]" (*Id.* at 5:3–13.) The Court then allowed for Defense Counsel, John Cantrell, to ask the juror questions. Mr. Cantrell inquired into the length of the business relationship between the juror and Ms. Padula's mother. (*Id.* at 5:16–22.) The juror responded by saying that it was around "two [or] three years" and that she cleaned the house "every week[.]" (*Id.* at 6:8–17.)

The Court then found that there was not "cause to remove [Juror Number 4], because she had little or no contact with Ms. Padula, no relationship with Ms. Padula, and the nature of her relationship with Ms. Padula's mother is strictly professional." (*Id.* at 7:18–8:2.) This ruling was

also based on Juror Number 4's representation that she had "a mind of her own and that she would not be influenced by this 'relationship and that it would not affect her being fair and impartial." (*Id.*) After making this finding, the trial continued with Juror Number 4 remaining on the panel.

The Government's case-in-chief lasted a week. (DE 313–DE 324.) The witnesses who testified included several of Luciano's co-conspirators, as well as members of a rival gang, the Latin Kings. On July 26, 2022, both the Government and the Defense rested and closing arguments were heard. (DE 324.) The jury deliberated and returned a verdict of Guilty on Counts 1, 2, 3, and 4 of the Second Superseding Indictment. (*Id.*)

On August 9, 2022, Luciano filed a motion for a new trial, arguing that the Court's decision not to dismiss Juror Number 4 prejudiced him. (DE 337 ¶ 9.) The Government then responded to this motion. (DE 343.) Luciano then indicated that he did not intend on filing a reply (DE 351), making his motion ripe for review.

**B.     Discussion**

Luciano argues that a new trial is warranted due to this Court's decision not to remove Juror Number 4. According to Luciano, this caused him prejudice because "he would have exercised a peremptory strike had the relationship [between the Juror and Ms. Padula's mother] been disclosed during jury selection." (DE 337 ¶ 9.)

The Court notes, at the outset, that Luciano's argument relies on an incorrect set of facts. In his motion, Luciano asserts that Juror Number 4 informed the Court "that she recognized AUSA Padula after her mother was in the court room for opening statements." (DE 337 ¶ 2(a).) However, Ms. Padula's mother was not in the courtroom. Juror Number 4 explained that she recognized Ms. Padula after "she started talking" and that she met Ms. Padula "six [or] seven

3

years ago" when she answered the door of her mother's house. (DE 340 at 3:10–17, 4:14–20.) Luciano also asserts that Juror Number 4 informed the Court she "has a key to the residence and visits the residence once a week." (DE 337 ¶ 2(c).) However, Juror Number 4 did not inform the court that she currently had a key and currently visited the residence once a week. Instead, she indicated that, while she had *previously* cleaned the mother's house approximately once a week, the last time she cleaned her house was "approximately five-and-a-half years ago." (DE 340 at 3:23–25, 6:13–17.) The juror also indicated that the only time she saw the mother was when she was cleaning her home. (*Id.* at 4:1–10.) Meaning, the juror had not visited Ms. Padula's mother's residence in more than half a decade.

The Court acknowledges that Luciano may have exercised a peremptory strike had he known about the juror's prior business relationship with Ms. Padula's mother. However, the mere fact that Luciano would have used a peremptory strike if he had such information does not warrant a new trial. "[A litigant] is entitled to a fair trial but not a perfect one, for there are no perfect trials." *McDonough Power Equipment, Inc.*, *v. Greenwood*, 464 U.S. 548, 553 (1984) (quoting *Brown v. United States*, 411 U.S. 223, 231–232 (1973)). *Voir dire* protects the right to a fair trial by helping to expose possible bias. *Id.* at 554. Meanwhile, peremptory challenges excuse jurors for "hints of bias not sufficient to warrant challenges for cause . . . ." *Id.* However, given the investment of judicial resources a trial represents, there has long been a lofty standard in order to obtain a new trial based on pre-existing juror bias: "[T]o obtain a new trial . . . a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id*. at 556; *see also United States v. Delatorre*, 572 F. Supp. 2d 967, 988 (N.D. Ill. 2008) ("To obtain a new trial based on a claim of pre-existing juror bias, the defendant must show that

4

the juror lied in response to a question in *voir dire*, and that a truthful answer would have been grounds to exclude the juror for cause) This standard applies to a Court's decision not to remove a juror both after the verdict is entered and prior to the verdict being entered. *See United States v. Warner*, 498 F.3d 666, 684 (7th Cir. 2007) (noting that the rule set forth in *McDonough* applies to pre-verdict decisions on whether to remove a juror for cause).

Luciano fails to argue that Juror Number 4's relationship required the Court to remove her for cause. Luciano simply notes that he would have exercised a peremptory strike had he known this information. But this is not sufficient. The composition of a jury may be changed "after the time for peremptory challenges has expired *only if* the 'cause' standard is met." *Warner*, 498 F.3d at 685 (emphasis added) (affirming the district court's standard for juror removal where the district court "stated that the appropriate action would be to excuse any juror for whom the newly acquired information would have led to a challenge for cause by one of the parties that the court would have granted"). Luciano's failure to argue that Jury Number 4 should have been removed for cause waives that argument and warrants denial of his motion. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

However, a new trial would not be warranted even if Luciano made this argument in his motion.[1] Simply put, Juror Number 4's prior relationship with Ms. Padula's mother did not

---

[1] Luciano's legal argument relies almost entirely on a citation to the case *U.S. v. Sandoval*, 241 F.3d 549 (7th Cir. 2001). However, in *Sandoval*, the Seventh Circuit was considering a question different from that posed in this case: whether a district court judge abused his discretion by removing an impaneled juror who, during the trial, realized she knew a witness. *Id.* at 552. The Seventh Circuit held that the trial court's decision to remove the juror was "far from an abuse of discretion." *Id.* However, the Seventh Circuit's finding that the trial court did not abuse its discretion by removing said juror does not provide helpful guidance into whether this Court deprived Luciano of a fair trial by keeping Juror Number 4. In other words, a finding that a judge did not abuse his discretion by removing a juror does not naturally imply that this Court committed an error entitling Luciano to a new trial by *keeping* a juror. Such an inference requires multiple leaps in logic, which Luciano never fleshes out in his brief. Furthermore, the case law discussed above clearly indicates that the Court's decision to keep Juror Number 4 does not support Luciano's request for a new trial.

support removal for cause. Jurors are considered impartial as long as they can "conscientiously and properly carry out their sworn duty to apply the law to the facts of a particular case." *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988). If a juror "can put aside the experiences and beliefs that may prejudice [her] view in the case and render a verdict based on the evidence and the law[,]" that individual juror meets the requirement of impartiality. *United States v. Taylor*, 777 F.3d 434, 441 (7th Cir. 2015). The Seventh Circuit has repeatedly upheld the trial court's denial of a for-cause challenge where the jurors provided clear expressions of their ability to remain impartial. *See United States v. Polichemi*, 201 F.3d 858, 863 (7th Cir. 2000) (affirming denial of a for-cause challenge where jurors initially "made some remarks during *voir dire* that indicated they would harbor an actual bias in favor of witnesses from the law enforcement community, but upon further questioning, they both promised to evaluate the evidence fairly and to decide the case based on what was presented to them"); *Taylor*, 777 F.3d 434, 441 (7th Cir. 2015) (affirming denial of for-cause challenge where the juror responded "yes" when asked "if he 'could be fair and impartial to both sides and decide this case only on the evidence introduced'"). Like the jurors in *Polichemi* and *Taylor*, Juror Number 4 in the instant case explicitly stated that she did not believe that her prior professional relationship with Ms. Padula's mother would impact her ability to be fair and impartial to both sides and that she had her "own mind[.]" (DE 340 at 5:3–13.) Given this clear statement attesting to her impartiality, removing her for cause based on that prior relationship was not warranted, since her statements indicated she had no actual bias.

The Court also briefly notes that this is not the rare case where implied bias warrants granting a for-cause challenge. *United States v. Medina*, 430 F.3d 869, 878 (7th Cir. 2005) (noting that the implied bias test rarely applies); *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990) ("Only in 'extreme' or 'extraordinary' cases should bias be presumed."). "The bias of a

6

prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law." *United States v. Wood*, 299 U.S. 123, 133 (1936). For example, even though a juror may be objective in fact, "a court must excuse a juror if the juror is related to one of the parties in the case, or if the juror has even a tiny financial interest in the case" because those type of relationships are "so close that the law errs on the side of caution." *United States v. Polichemi*, 219 F.3d 698, 704 (7th Cir. 2000). However, the relationship in front of the Court falls well short of that required to find implied bias. In cases involving relationships far more likely to raise a concern of bias, the Supreme Court has found that bias was not implied. *See Remmer v. United States,* 347 U.S. 227 (1954) (finding that an attempted bribe of juror for favorable verdict did not require finding of implied bias); *Dennis v. United States*, 339 U.S. 162 (1950) (holding that a juror's employment with federal government did not warrant a finding of implied bias, where federal government was a party in the case). *Smith v. Phillips*, 455 U.S. 209 (1982) shows just how high the bar is in order to find implied bias. In that case, the Supreme Court did not find implied bias where the juror in question submitted an application to become a felony investigator in the prosecuting attorney's office, while said case was ongoing. *Id.*; *United States v. Polichemi*, 219 F.3d 698, 705 (7th Cir. 2000) (explaining that the Supreme Court in *Smith* rejected defendant's efforts for relief on imputed bias grounds where the "juror submitted a job application to the prosecuting attorney's office during a murder trial"). If there was no implied bias where a juror had a pending application in front of the district attorney arguing that very same case, then there certainly is no implied bias here.

  Because Luciano waived his argument that Juror Number 4 should have been removed for cause, and because removal for cause was not warranted even if that argument had been raised, Luciano is not entitled to a new trial.

## C. Conclusion

For the reasons stated above, the Court DENIES Luciano's motion for a new trial. (DE 337.)

SO ORDERED.

ENTERED: December 16, 2022

                                                /s/ JON E. DEGUILIO
Chief Judge
United States District Court